UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARCUS T. BARTOLE, <br><br> Plaintiff, <br><br> v. <br><br> SHAY HUGHES, *et al.*, <br><br> Defendants. | Cause No. 2:22-CV-257-PPS-JPK |

## OPINION AND ORDER

Marcus T. Bartole, a prisoner without a lawyer, filed a complaint against his former attorney, Shay Hughes, both individually and as an "organization/entity." [DE 1.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Notably, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)).

Bartole seeks to proceed on behalf of himself and a class of unnamed inmates whom he alleges were harmed by the defendant, a public defender named Shay

Hughes.[1] In a nutshell, Bartole believes that Hughes violated various professional responsibility and ethics rules, state statutes, the Constitution, and federal laws by providing ineffective assistance of counsel to the inmates confined at the Tippecanoe County Jail. He alleges that Hughes violated his oath under the Indiana Rules for Admission to the Bar and the Discipline of Attorneys "through belief, thoughts, mindset, opinions, desires, interests, personality, passions, experience, actions, unmoral character/fitness; was and is unmoral, unethical, unfit, untrustworthy, dishonest, unfair, unsuitable, mentally unstable, emotionally unstable, fraudulent, deceitful, among many other elements." [DE 1 at 11.]

Hughes, in that vein, has allegedly defrauded the judicial system and the public by accepting tax dollars to represent clients in an unfit manner, claiming that he uses the Indiana Criminal Code and the state bond policy to detain his clients and obtain a "collective cash cow." *Id*. at 13. Bartole claims that Hughes applies the law unequally to "socio-economic[ally] disadvantaged sex offenders," like Bartole himself. *See id*. Bartole claims that Hughes has failed to file various motions on behalf of his clients that could have led to a reduction of bond or outright release — instead, Hughes uses the law to "indefinitely confine/commit his clients" and pressure them to accept plea deals even when they are innocent. *Id*. at 14. Bartole claims that Hughes merely "collect[s] the money awarded to him for being 'ap[p]ointed' counsel and do[es] . . . no legitimate work/perform any duty." *Id*.

---

[1] Bartole seeks to certify a class pursuant to Federal Rule of Civil Procedure 23 consisting of "all persons whom defendants where [*sic*] tasked with representing as a public defender." [DE 1 at 5.]

Bartole also alleges that Hughes has conspired with various unnamed state officials to violate the constitutional rights of inmates. In support of this allegation, he states: "[A]fter numerous emails, text messages, phone calls, direct conversations in the courthouse and out plus many other sources/activities created: a full organized effort, identity, entity in collusion with the state to initiate mentioned extremely unlawful, unconstitutional, unethical, damaging, hurtful plans, intentions, passions, malicious/fraudulent intents." *Id*. at 16. These alleged plans included accepting more clients than Hughes could effectively represent, refusing to address the bond issues of his clients, and failing to initiate discovery, depositions, and/or investigations. Bartole believes that these actions have created a two-tier system of justice, in which Hughes' clients are subjected to longer confinement than those who have different attorneys.

Bartole has sued Hughes in his individual capacity, as well as "Shay Hughes organization/entity." [DE 1 at 1.] He seeks "prospective monetary relief" and "prospective, declaratory and injunctive relief only under Federal law." *Id.* at 23–25, 34. He asks me to enjoin Hughes and his unnamed conspirators from "enforcing policies, practices, or procedures" that violate the Constitution. *Id*. at 34. He also wants Hughes to be disbarred. *Id.*

As an initial matter, Bartole will not be permitted to bring suit on behalf of other inmates as part of a class action lawsuit or otherwise. 28 U.S.C. § 1654 (providing that "parties may plead and conduct their own cases *personally or by counsel*" (emphasis added)); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986); *see also Jones v. Griggs*, 612 Fed. Appx. 395, 396 (7th Cir. 2015) (even an individual with a "substantial

3

relationship" to a plaintiff cannot represent her when "he is not a lawyer"). And, to the extent Bartole is seeking to certify a class, I will deny that request for substantially the same reason. *See Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (finding, generally, that it is "not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative"); *see also* Fed. R. Civ. P. 23(a)(4); *Goodvine v. Meisner*, 608 Fed. Appx. 415, 417 (7th Cir. 2015) (affirming finding that plaintiffs "could not fairly represent the class interests because they were *pro se* (and had not made an effort to secure class counsel)," and thus, were not "adequate [class] representatives"). Accordingly, this lawsuit will not proceed as a class action.

While Bartole may bring claims against Hughes on his own behalf, I find that this complaint doesn't state any. The overall gist is that Hughes' incompetent legal assistance has led to Bartole's "indefinite" imprisonment.[2] However, Bartole's unhappiness with his representation doesn't support a viable constitutional violation in this context. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325, n.18 (1981) (noting that prisoners claiming wrongful incarceration due to ineffective or malicious counsel may be able to proceed under state tort law, or habeas corpus proceedings, which "normally is the

---

[2] I have reviewed the state court docket, and Bartole is currently incarcerated due to pending rape, failure to register as a sex offender, sexual battery, strangulation, criminal confinement, and battery charges. *See State of Indiana v. Bartole*, Cause No. 79D01-2111-F3-000033 (filed Nov. 17, 2021), available at https://public.courts.in.gov/mycase/#/vw/Search (last visited Oct. 17, 2022). After multiple continuances—the most recent of which appears to be related to a change of counsel prompted by Bartole's filing of this lawsuit—a jury trial is currently scheduled for January 9, 2023. *Id*. Of note, a probable cause affidavit was filed, and the judge found probable cause to detain Bartole on November 17, 2021. *Id*. The Court is permitted to take judicial notice of the electronic docket of the state court in determining whether Bartole's complaint states a claim. Fed. R. Evid. 201; *see Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018).

most important form of judicial relief"; but such claims are not actionable under § 1983); *Walton v. Neslund*, 248 Fed. Appx. 733, 733–34 (7th Cir. 2007) (affirming dismissal of federal claim related to attorney incompetence as "patently frivolous").[3]

This line of reasoning highlights a critical defect that undermines all of Bartole's § 1983 claims. "In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "The under-color-of-state-law element means that § 1983 does not permit suits based on private conduct, 'no matter how discriminatory or wrongful.'" *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (internal citation omitted). Private defense attorneys—even appointed public defenders who are paid by the state—are not considered state actors under § 1983. *See Polk Cnty.*, 454 U.S. at 325 ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012) (dismissing claims against public defender as frivolous "because a court-

---

[3] Of note, Bartole repeatedly states he is not trying to challenge any state commitment orders or judgments. Nor could he under § 1983. *See* 28 U.S.C. § 2241 (pretrial), § 2254 (post-conviction); *Preiser v. Rodriguez*, 411 U.S. 475, 488 (1973) (habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement). "[I]f a prisoner claims to be entitled to probation or bond or parole, his proper route is habeas corpus, even though he is seeking something less than complete freedom." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991); *see also Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015) ("The appropriate vehicle for a state pre-trial detainee to challenge his detention is § 2241."). Moreover, federal courts must abstain from interfering in state court criminal proceedings if the state court provides an adequate opportunity to raise the federal claims and "no exceptional circumstances exist that would make abstention inappropriate." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007) (citing *Younger v. Harris*, 401 U.S. 37, 43 (1971)). "Although federal district courts have jurisdiction over pretrial habeas petitions, they grant such relief only sparingly." *Blanck v. Waukesha Cnty.*, 48 F. Supp. 2d 859, 860 (E.D. Wis. 1999) (citing *Neville v. Cavanaugh*, 611 F.2d 673, 675 (7th Cir. 1979)).

appointed public defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983").

It's true a private individual can act under color of law when she is a "willful participant in joint action with the State or its agents." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017). But "[t]his requires 'evidence of a *concerted effort* between a state actor and that individual.'" *Id*. (emphasis in original) (internal citations omitted). While the conduct of private actors can transform them into state actors for § 1983 purposes, the facts must permit an inference that defendant's actions are "fairly attributable to the state." *Id*. (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). This is called the "conspiracy theory" of § 1983 liability. *Spiegel*, 916 F.3d at 616–17. "[M]ere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)).

Here, despite Bartole's vigorous insistence that Hughes is a state actor, all of Hughes' alleged acts or omissions—accepting clients appointed by the court; receiving state funds for his services; filing or refusing to file various motions including those related to bond proceedings; failing to initiate discovery, depositions, and/or investigations; and appearing in court—fall within the traditional role of defense counsel and cannot be considered state action. Even if the conclusory allegations of a conspiracy are credited—allegations that Hughes communicated with unnamed state actors via text, phone, and in-person conversations inside and outside of the courtroom, which facilitated the receipt of tax dollars even though he represented clients in an unfit

6

manner—the claims still fail because the specific conduct that Bartole alleges involves acts taken during the ordinary course of criminal proceedings and which are not conspiratorial in nature. *Srivastava v. Cottey*, 83 Fed. Appx. 807, 810 (7th Cir. 2003) ("Although [plaintiff] alludes to a conspiracy involving [her public defender], the prosecutors, and the judge, the acts she points to as evidence of [the public defender's] involvement—urging a defendant to accept a plea agreement and agreeing to a continuance—are traditional defense counsel functions which do not bring [the public defender] into the scope of § 1983.") (citing *Polk Cnty.*, 454 U.S. at 317 n.4); *see also McMillian v. Litscher*, 72 Fed. Appx. 438, 441 (7th Cir. 2003) (affirming dismissal of claims where plaintiff accused defendants of plaintiff "conduct that is not conspiratorial"). These claims must be dismissed.

In addition, Bartole alleges that Hughes violated 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights. *See generally Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022). In addition to the usual conspiracy requirements, a plaintiff must plead that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (quoting *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992)). Bartole hasn't alleged such a conspiracy, nor can he, because "socio-economic[ally] disadvantaged sex offenders" [DE 1 at 13] are not a protected class. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (holding that plaintiff failed to establish animus requirement for § 1985(3) conspiracy claim because his "status as a parolee is not considered a 'suspect class' for equal-protection purposes"); *McMillian*, 72 Fed. Appx. at 440 (affirming dismissal of § 1985 conspiracy

claims where plaintiff "did not allege class-based animus," and reaffirming that such claims require allegations that the defendants' actions "were motivated by racial, or otherwise class-based, discriminatory animus"). Consequently, I find that Bartole has not alleged any actionable claims under either 42 U.S.C. § 1983 or § 1985.

Bartole's next claim is that Hughes violated Title II of the Americans with Disabilities Act (ADA) by denying him treatment for his "sexual disabilities" outside of the Tippecanoe County Jail setting. [DE 1 at 23.] This claim must be dismissed as well. Although Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," 42 U.S.C. § 12132, individuals are not amenable to suit under the ADA because they are not considered public entities, s*ee id.*; 29 U.S.C. § 794(b); *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). While Bartole insists that Hughes is an "organization/entity," he is not a proper defendant under the ADA. *See Jaros*, 684 F.3d at 670 & n.2.

Finally, Bartole claims that Hughes violated the Religious Land Use and Institutionalized Persons Act (RLUIPA) by excluding his clients from participating in any services or programs outside of the Tippecanoe County Jail. Instead, Bartole alleges, Hughes detains his clients "for [an] indefinite period of time" and denies them "absolutely medical care/treatment of hearing loss and P.T.S.D. in general and . . . treatment in the least restrictive setting." [DE 1 at 32.] "RLUIPA prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate 'that imposition of the burden on that

8

person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008) (citing 42 U.S.C. § 2000cc–1(a)(1)–(2)). Bartole's claims are factually frivolous, as none of his allegations suggest that he sought to engage in any sort of religious exercise. *See id*. at 797 ("Because RLUIPA is a guarantor of sincerely held religious beliefs, it may not be invoked simply to protect any 'way of life . . . if it is based on purely secular considerations.'" (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972)).[4]

This complaint does not state any claims. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

Accordingly, this case is **DISMISSED** pursuant to 28 U.S.C. § 1915A because the complaint does not state any actionable claims.

**SO ORDERED** on October 18, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

[4] Bartole may be attempting to allege state law claims related to attorney malpractice. Without commenting on the validity of such claims, due to the absence of any federal claims, I will relinquish jurisdiction over any state law claims. *See Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claim conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c)(3).").